IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JOHNNY HORTTOR,<br>(TDCJ No. 02042196) | § § § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 1:16-CV-214-BL |
| BRAD LIVINGSTON, *et al.*, | § § § | |
| Defendants. | § | Assigned to U.S. Magistrate Judge |

## OPINION and ORDER OF PARTIAL DISMISSAL UNDER
## 28 U.S.C. §§ 1915A(B) and UNDER 28 U.S.C. §§ 1915(e)(2)(B) [1]

This case is before the Court for review of pro se plaintiff Johnny Horttor's case under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these provisions provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. Based upon review of the live pleading and applicable law, the Court finds that some defendants and claims must be dismissed under these provisions, and that Horttor will be allowed to obtain service of process on the remaining claims against some defendants.

### I. BACKGROUND[2]

Horttor, an inmate at the Texas Department of Criminal Justice's ("TDCJ") Neal Unit, initially filed a civil-rights complaint asserting claims arising from the medical treatment provided to him for Hepatitis C while he was housed at the TDCJ Byrd Unit. (Compl. doc. 1.) After Horttor filed several different partial amended and supplemental pleadings, the Court directed him to file all

---

[1] Plaintiff Horttor filed a consent to proceed before the United States Magistrate Judge, such that this magistrate judge can address all matters in this case under 28 U.S.C. § 636(c). (Doc. 8.)

[2] As the result of the filing by Horttor of an interlocutory appeal, the case was stayed and administratively closed for over a year. The case was reopened as of August 8, 2018. (Order, doc. 36).

of his claims into one final amended complaint. (Order, doc. 19.) Although Horttor then submitted a form civil-rights complaint with attachment pages as a "Final Amended Complaint," as he subsequently again filed several partial supplements/amendments to that final amended complaint (docs. 22, 23, and 52), the Court again directed Horttor to file a second amended complaint to include all of his facts, claims, and causes of action into one pleading. (Order, doc. 57.) Horttor has now filed a form civil-rights complaint seeking relief for violation of his rights under the Eighth Amendment and other forms of relief as a second amended complaint with attachments pages, collectively now referred to as "SAC." (Docs. 58 and 58-1.)

The SAC consists of a completed form civil rights complaint, portions of handwritten documents re-submitted by Horttor, and copies of medical record and grievance exhibits. SAC (docs. 58, 58-1.) Within the SAC, the Court discerns that Horttor makes claims against the following fourteen defendants: Brad Livingston and Bryan Collier, Executive Directors of TDCJ; Dr. Talley and Dr. David Callender, University of Texas Medical Branch; Dr. Benjamin Leeah, Texas Tech University Health Sciences; Dr. D'Cunha; Neal Unit officials—David Base, Suzanne Tenorio, and Kelly Swanson; Montford Unit provider Patricia Aristimuno; In Yang Wilson, Physician's Assistant, Ware Unit[3]; L. Gonzales, Warden, Ware Unit; Todd Mitchell, President, Texas Tech University Health Science Center; and the TDCJ Health Services Division 2 Director. SAC (docs. 58, 58-1.)

In this pleading, Horttor alleges that a TDCJ policy exists that "when offenders qualify for treatment they are placed on a waiting list for [the] cost of $85,000.00 to be treated for the 'Hep C' virus Harvoni treatment." SAC (doc. 58-1, at 10.) Horttor seeks injunctive relief in the form of an order providing him with Hepatitis C treatment consisting of the medications Harvoni/Solvadi, a

---

[3]Horttor lists only one Wilson, "In Yang Wilson" a ("PA") assumed to be a physician's assistant, in the "Defendants" section of the SAC. SAC (doc. 58 at 3.) Although Horttor also refers to a "Dr. Wilson" later in the SAC, it appears this is in reference to the actions of In Yang Wilson. Thus, the Court assumes there is only one defendant named Wilson.

more vigorous treatment provided by new doctors, along with providing him a liver transplant. SAC (doc. 58, at 4 § VI.) He also seeks monetary damages for the pain and suffering he has sustained due to the alleged delay in treatment for Hepatitis C, and he purports to seek relief on behalf of the "thousands of other offenders who have Hep C whose [sic] being subjected to the waiting list." *Id.*

## II. PRELIMINARY SCREENING[4]

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim that falls under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994), "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v.*

---

[4]In response to Court order, the TDCJ provided an extensive and thorough *Martinez* Report with supporting medical records. (Doc. 42, 1 through 41). This report included the accompanying Affidavit of Benjamin Leeah, M.D. (docs. 42, 42). A *Martinez* Report (*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978)) is a tool adopted by the United States Court of Appeals for the Fifth Circuit that district courts may use to further develop the factual basis of a prisoner's complaint to determine whether sua sponte dismissal is appropriate. *See Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam). A *Martinez* Report cannot be used to resolve disputed material facts if the defendants' assertions conflict with pleadings submitted by the plaintiff. *Id.* (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992); *Hendrickson v. Davis*, 172 F. App'x 48, 48 (5th Cir. 2006)). Thus, although the instant *Martinez* Report provides an extensive record of Horttor's history of medical care, the Court cannot rely upon the facts in the *Martinez* Report to resolve particular fact disputes.

*Lyons*, 74 F.3d 99, 102 (5th Cir. 1996). A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. ANALYSIS

#### A. Dismissal of Claims Asserted on Behalf of other Inmates.

As noted above, Horttor refers in his pleading to claims on behalf of "thousands" of other inmates suffering from Hepatitis C who may also not being given what Horttor believes is the appropriate medical treatment. Such pleading comes after the Court already denied Horttor's motions to certify a class action and to reconsider the Court's denial of class certification. (Docs. 13, 56.) Horttor is the only party plaintiff to this case, and he is proceeding pro se. Horttor does not claim that he is a licensed attorney, and thus he is not eligible to represent another pro se party in federal court. Although 28 U.S.C. § 1654 authorizes a litigant to proceed in federal court as his or her own counsel, individuals who do not hold a law license may not represent other parties even on a next-friend basis. *See Martin v. City of Alexandria*, 198 F. App'x. 344, 346 (5th Cir. 2006) (citing *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause") (emphasis in original)); *see also Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978) ("[I]ndividuals not licensed to practice law by the state many not use the 'next friend' device as an artifice for the unauthorized practice of law.") Thus, Horttor is not authorized to assert claims on behalf of other unknown and unidentified

plaintiffs. Any claim by Horttor for relief on behalf of thousands of other persons must be dismissed.

B.  **Dismissal of Some Claims Against Executive Defendants**

Plaintiff identifies Brad Livingston and Bryan Collier as the Executive Directors of TDCJ, and also lists as a defendant the Health Service Division 2 Director. SAC (doc. 58, at 1,3.) A claim of liability for violation of rights under 42 U.S.C. § 1983,[5] regardless of the particular constitutional theory, must be based upon personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir. 1980); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Horttor writes that "Livingston was Director when the original suit was filed, Bryan Collier is present Exec. Director. Both are in charge and responsible for policies, operations and anything else in TDCJ." SAC (doc. 58, at 3.) Later in the pleading, Horttor writes "Brad Livingston, Bryan Collier, both Executive Directors of TDCJ should be held accountable because they oversee all the policies in the TDCJ." SAC (doc. 58, at 7.)

Review of these particular allegations against Livingston and Collier reveal that they do not contain factual allegations of personal involvement or knowledge by Livingston or Collier in any of the underlying incidents included in Horttor's claims against other medical officials. Thus, it appears Horttor has named these two individuals on these claims only because of their roles as executives over the Texas criminal justice system. The Fifth Circuit has stated that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of respondeat superior, which does not generally apply in § 1983 cases. *See Alton v. Texas A&M Univ.*, 168 F.3d

---

[5]"Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C.A. § 1983 (West 2012).

196, 200 (5th Cir. 1999) ("Only the direct acts of omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983") (citation omitted); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability")(citations omitted); *see also Williams v. Luna*, 909 F.2d 121, 123 (5th Cir.1990). Thus, to the extent Horttor has named Livingston and Collier merely for the actions of their subordinates, and for the general allegations of being accountable only "because they oversee all the policies at TDCJ, " these claims against Livingston and Collier must be dismissed.[6]

Similarly, Horttor's claims against Todd Mitchell, M.D., David L. Callender, M.D., and the TDCJ Health Services Division 2 Director share the same inadequacies. As to the Health Service Division 2 Director, Horttor has alleged no other facts against this defendant. And as to Todd Mitchell, Horttor alleges only that Mitchell is the "President of the Board of Regents for Texas Tech University Health Science and Texas Tech should be held responsible for their employees conduct." SAC (doc. 58, at 5.) But this is merely an attempt to hold Mitchell liable only through a vicarious liability or respondeat superior claim. Otherwise, Horttor identifies both Mitchell as President of the Texas Tech University Health Systems Board and David Callender as the President of the University of Texas Medical Branch at Galveston Board of Regents, as officials named under the Texas Government Code § 552.003. SAC (doc. 58-1, at 15.) But that reference is to a "Definitions" section of the Texas' open government law. *See* Tex. Gov't Code Ann. § 552.003(1)(A)(xii) (West Supp. 2018). Thus, having failed to state any personal involvement of these three defendants, Horttor's

---

[6]The Court addresses Horttor's claims against Livingston and Collier arising from an alleged failure to respond to grievances and letters within Section III (C) *infra*. Furthermore, the Court will permit Horttor to obtain service upon Livingston and Collier of his claim that a TDCJ policy existed to deny certain treatment for Hepatitis C due to cost, as explained in Section IV *infra*.

claims against Todd Mitchell, M.D., David Callender, M.D., and the Health Services Division 2 Director must also be dismissed.

### C. Dismissal of Claims Arising from Failing to Respond to Letters/Grievances

Plaintiff named Warden L. Gonzalez with a claim arising from her review of his grievances. In this regard, Horttor writes:

> "As the Step II Grievance the warden was supposed to oversee the Step I Grievance processing. It [sic] a practice in TDCJ to allow each Department head to answer their own grievances. If she would have processed my medical grievance she would have seen the 'deliberated indifference' portrayed from her medical personnel. In turn her hands off approach allow [sic] the deliberate indifference to proceed therefore she in a sence [sic] became part of that deliberate indifference."

SAC (doc. 58-1, at 11.) But to the extent that Horttor complains that Warden Gonzales should be found responsible for a failure to intervene when she learned of his complaints through his administrative grievances, "the law is clear that the plaintiff is not constitutionally entitled to an investigation of his complaints or administrative grievances or to a favorable response thereto." *Hayward v. Douglas, et al.*, No.07-072-FJP-DLD, 2011 WL 13182993, at *5 (M.D. La. March 1, 2011), *rep. and rec. adopted*, 2011 WL 13187295 (M.D. La. Mar. 16, 2011). Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a) (West 2012). But allegations of a delay or denial in the processing of a grievance do not state a claim of a constitutional violation. As the United States Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*:

> Insofar as [the inmate plaintiff] seeks relief regrading an alleged violation of his due process rights resulting from the prison grievance process, the district court did not err in dismissing his claims as frivolous . . . [an inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless."

*Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Jenkins v. Henslee*, No. 3-01-CV-

1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Another district court thus explained "Congress established the exhaustion requirement to give prison and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay*, CA No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sep. 27, 2010), *rep. and rec. adopted*, 2010 WL 4286162 (Oct. 28, 2010). Accordingly, Horttor's claims regarding the alleged failure of defendant Gonzales to properly investigate and/or respond to his administrative grievances and written complaints is without legal foundation and must be dismissed.

Horttor's claims against Livingston and Collier arising from his grievances/letters must similarly be dismissed. Horttor writes that the Executive Directors were "[O]ver the grievance procedure and were made known that this 8th Amendment violation of my rights by the numerous requests and grievances that I filed and has [sic] done nothing to investigate or attempt to intervene to my pleas for help." SAC (doc. 58, at 7.) An allegation that a government defendant merely failed to respond to a letter, without more, is not sufficient to support a claim for violation of constitutional rights. *See generally Canter v. O'Malley*, No. RWT 11 CV 918, 2012 WL 254014, at *8 (D. Md. January 25, 2012) (noting that an inmate's attempt to "force liability on the Governor and the Surgeon General by simply writing a letter and stating that failure to respond constituted deliberate indifference is illogical"); *Woods v. Goord*, No. 97 CIV 5143 (RWS), 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (noting generally that "failure to respond to plaintiff's letter requesting help does not in itself evince deliberate indifference to plaintiff's medical needs") (citations omitted)). Thus, any claim

against Livingston and Collier arising from their failure to respond to any grievance/letter from Horttor must be dismissed.

D.  **Dismissal of Claims for Failure to Allege Personal Involvement**

As noted above, a claim of liability for violation of rights under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility. *See Murphy*, 950 F.2d at 292; *Jacquez*, 801 F.2d at 793. Through the Court's different orders directing Horttor to file one inclusive pleading, he was expressly informed of the need to state specific facts alleging personal involvement of each defendant in the events made the basis of his claims. (Orders, docs. 19, 57.) In spite of the Court's repeated directives, and after giving Horttor an opportunity to re-plead his best case in his SAC, he has failed to allege sufficient facts of personal involvement as to several of the other named defendants.

Horttor has named three persons listed as providers at the Neal Unit—Dr. David Base, Suzanne Tenorio, and Kelly Swanson; and one provider at the Montford Unit—Patricia Aristimuno. SAC (doc. 58, at 3, 6.) With regard to defendant Aristimuno, Horttor has alleged no other facts against her. As to the three Neal Unit providers, Horttor alleges collectively that they are "allowing [him] to get progressively worse." SAC (doc. 58, at 3.) Otherwise, the only other allegations against these three defendants is that "they should all be defendants because they oversaw all medical and my worsening condition. Through the discovery process it will be clear through their lies and denials my 8th Amendment violation and deliberate indifference to my serious medical needs will become very clear." SAC (doc. 58, at 6.) Unfortunately for Horttor, such anticipatory pleading is not sufficient to state a colorable claim of a violation by any of these persons of his constitutional rights. Without stating specific facts of the particular actions each of these defendant took towards Horttor, he has failed to state a claim upon which relief may be granted against these defendants. Thus, Horttor's claims against Dr. Patricia Aristimuno, Dr. David Base, Suzanne Tenorio, and Kelly

Swanson must be dismissed.

E.    **Dismissal of Claims under the Texas Tort Claims Act**

Within the attachment pages to the SAC, Horttor also claims that "the lack of treatment for Hepatitis C [is also] a medical malpractice claim under the Texas Tort Claims Act." SAC (doc. 58-1, at 8.) He also writes that the State of Texas, and defendants Wilson, Gonzales and Livingston should be held liable under the Texas Tort Claims Act. *Id.* at 9. Horttor's claims under the Texas Tort Claims Act ("TTCA") must be dismissed for several reasons.

First, as to the State of Texas, such claim is barred in federal court. "The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983" unless the state has expressly consented to the suit. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1952, 1054 (5th Cir. 1998). Furthermore, "[s]uits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself. . . ." *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 n. 3 (5th Cir. 1996) (citing *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 70-71 (1989)). A court may find that the state has waived its Eleventh Amendment immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909))). "A state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Id.* at 852. The Fifth Circuit has determined that the TTCA "waives sovereign immunity in state court only"; therefore, a plaintiff may not sue the State of Texas in federal court under the TTCA absent an express waiver of the immunity. *Id.* As the State of Texas has not expressly waived its sovereign immunity for suit under the TTCA in federal court, such claim must be dismissed.

Otherwise, Horttor has asserted medical negligence claims under the TTCA against three individual defendants. These claims fail for two reasons. First, the individuals have statutory immunity. The TTCA provides: "If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2019). Upon motion of the employee the suit is to be dismissed. *Id.* This provision "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka v. Velasquez*, 332 S.W. 3d 367, 381 (Tex. 2011). And this provision applies regardless of whether sovereign immunity would ultimately bar the claim against the government unit. *Bonner v. Pace*, No. 6:18-CV-373, 2018 WL 7288528, at *4 (E.D. Tex. Nov. 6, 2018), *rep. and rec. adopted*, 2019 WL 560245 (E.D. Tex. Feb. 11, 2019).

The TTCA defines "scope of employment" to mean "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (West 2019). "An official acts within the scope of her authority if she is discharging the duties generally assigned to her." *Anderson v. Bessman*, 365 S.W. 3d 119, 125 (Tex. App. Houston [1st Dist.] 2011, no pet.) (quoting *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 658 (Tex. 1994)). Each of the three named persons were all functioning in their respective roles within the TDCJ and took any action with respect to Horttor while engaged in that employment. Thus, as Horttor has sued these three defendants in their individual capacities for acts that occurred in the course and scope of their employment, Horttor's claims for medical negligence under the TTCA must be dismissed consistent with § 101.106(f). *See Carr v. City of Spring Valley Village*, CA No.

H-18-2585, 2019 WL 1276100 at *13 (S.D. Tex. Mar. 20, 2019) (dismissal of claim against individual government employees mandated by § 101.106(f) where no dispute the named individuals were acting in the course and scope of their employment); *Bonner,* 2018 WL 7288528, at *4–5.

Alternatively, Horttor's medical negligence claims do not fall within the waiver of immunity set out in the TTCA. "In order for immunity to be waived under the Tort Claims Act, the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver." *Morgan v. City of Alvin,* 175 S.W. 3d 408, 417 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citation omitted). The three areas of liability in which immunity is waived under the TTCA are "(1) injury caused by an employee's use of a motor-driven vehicle within the scope of his employment; (2) injury caused by a condition or use of tangible personal or real property; and (3) premises defects." *Id.* at 418 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.021-022). Horttor's recitation of negligence in the provision of medical care does not fall within any of the three areas for which immunity is waived by the TTCA. *See generally Hundall v. University of Texas at El Paso, Et Al.,* EP-13-CV-365-DCG, 2014 WL 12496895, *14 (W.D. Tex. 2014) (dismissing negligence and medical malpractice claims under the TTCA as not arising from a condition or use of tangible personal property). Horttor's medical negligence claims under the TTCA arising from his care and treatment for hepatitis C must be dismissed for this additional reason.

## IV. SERVICE OF REMAINING CLAIMS

The Court concludes that as to Horttor's remaining claims against Dr. Benjamin Leeah, Dr. Talley, Dr. D'Cunha, and In Yang Wilson, Plaintiff is entitled to have summons, and the May 17, 2019 Second Amended Complaint with attachments (docs. 58, 58-1) served upon them, as set forth in a separate order issued this day.

Also, although the Court has identified and dismissed Horttor's claims against Livingston and Collier based upon the doctrine of respondeat superior, based upon failing to respond to grievances or letters, and based upon Horttor's general claim that each is responsible to oversee all policies of TDCJ, Horttor separately provides a more specific allegation against these two defendants arising from the presence of a policy that is the alleged cause of his failure to receive Hepatitis C treatment. In this regard, Horttor writes:

> *The Defendants were negligent in their "ministerial function" because of a policy that places inmates on a waiting list for the Hepatitis C treatment for cost reasons. In that only two inmates per region annually can take part in this treatment as set out by TDCJ policy. In March of 2016 by my lab results of my Lat. at 115, my AST 101, and my viral load (FRT at 34:22) (APRI at 3.14) my (Meld 6 [below] 6 normal) Ammonia 37 when 32 should be the highest. Should have triggered a response from the Medical Department to start my treatment immediately for Hepatitis when in fact these levels were enough to qualify me for the treatment. These doctors & nurses hands were tied due to the "ministerial functions" handed down by the upper ranks of the Texas Dept. of Criminal Justice. As a result of this unconstitutional policy (waiting list) I have developed a tumor as noted by my C.T. scan of July. A pen-head size to the size of 7mm or O this big. I now have a cancerous tumor or cirrhosis of the liver and being subjected to this waiting list instead of starting my "Hep C" treatment has caused me a tumor which has place my life in danger and has caused me to experience a lot of pain and suffering.

SAC (doc. 58-1, at 7.) Accompanying this allegation, Horttor also writes that "Livingston had a duty by law to provide adequate medical care." SAC (doc. 58, at 7.) Also, Horttor claims that Livingston and Collier's involvement is based on "[t]heir policy of a waiting list for the 'Hep C' treatment is the true violator of my 8th Amendment rights to be free from cruel and unusual punishment." SAC (doc. 58–1, at 12.) Horttor also writes that the "Executive Directors had the opportunity to change this policy but because of 'cost' they refused. All at the price of the misery I face now while my health deteriorates and the mental stress of facing death. All in a plan to avert cost." SAC (doc. 58–1, at 13.) The Court concludes that these allegations sufficiently allege that there is a policy of TDCJ (denial of access to certain types of Hepatitis C treatment protocol due to cost) which contributed to the

Eighth Amendment violation Horttor alleges in this case. Thus, Horttor is also entitled to have summons, and the May 17, 2019 Second Amended Complaint with attachments (docs. 58, 58-1) served upon Brad Livingston and Bryan Collier, as directed in a separate order.

## V. ORDER

It is therefore **ORDERED** that the following claims by plaintiff Johnny Horttor are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii):

(1) all claims that Horttor asserts or seeks to assert on behalf of any other inmate;

(2) all claims under the Texas Tort Claims Act;

(3) all claims against Brad Livingston and Bryan Collier (except for the claim that Horttor is being denied Hepatitis C treatment as a result of the implementation of a cost-based policy) ; and

(4) all claims against Dr. David Callender, David Base, Suzanne Tenorio, Kelly Swanson, Patricia Aristimuno, L. Gonzales, Todd Mitchell, M.D., and the TDCJ Health Services Division 2 Director.

SIGNED May 29, 2019.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE